## Wylie *v.* The State.

*Simmons, C. J.*—Taking the evidence most favorably for the State's contention, and the statement of the accused most strongly against him, nothing more was established than that he contracted with the prosecutrix to build for her a house within a stipulated time and at a stated price which she paid to him in advance, and that he really never intended to build the house at all but fraudulently pretended he would do so, for the purpose of obtaining the money and applying it to his own uses. While these facts show great moral turpitude on his part, they do not render him guilty of larceny after trust; and therefore a conviction of this offense was contrary to law.

July 29, 1895.                                *Judgment reversed.*

Indictment for larceny after trust. Before Judge Clark. Fulton superior court. March term, 1895.

The indictment charged, that the defendant, having been entrusted by Matilda Gilbert with two bank checks for $75 each, for the purpose of getting them cashed and applying the money to the building of a house for her in Washington, Ga., did get the money on the checks, and fraudulently

converted it to his own use, and failed and refused to return it to her on demand made therefor. Defendant was found guilty, and moved for a new trial on the general grounds. The motion was overruled, and he excepted. According to the testimony of Matilda Gilbert, defendant agreed with her to build for her a house at Washington for $150, he to furnish the material and to do the work for that sum. She thereupon caused to be drawn and delivered to him two bank checks for $75 each, payable to his order. He was to leave these checks with V. L. Smith in Atlanta and go to Washington, and when he got everything there prepared, he was to send her a telegram, and then Smith was to send him the money as needed for the work. He was to have fifteen days in which to complete the same. In three or four days after the checks were delivered to him, she ascertained that he had drawn all the $150 from the bank and gone off with it; whereupon she caused him to be arrested in Washington and brought back to Atlanta. Just before his arrest he sent her a telegram which she received, stating that he had made no arrangements about building, could not buy lumber cheaply enough at Washington, and would not leave there until he heard from her. On his return to Atlanta, she demanded that he return the money to her, which he refused to do, stating that he had left $65 of it with her aunt in Washington, and had spent the balance, which he would work for and pay back. He further stated to her that he had spent none of it for lumber or other material. She never got back any of the money. He did not tell her he had left $87 with her aunt. Her aunt wrote her that she had the money. He told her before leaving Atlanta, that he was going to draw some of the money to buy lumber. Smith testified, among other things, that on the day the checks were shown to have been cashed, defendant came and asked him to go to the bank and identify defendant. This Smith did, and defendant then and there endorsed one of the checks and got the money.

He seems to have got the other check cashed later on the same day. That afternoon he came into Smith's office wearing an entirely new outfit of clothing, and exhibited money to the amount of $100 or more. On being asked where he got it, he replied that he had been at work as fire-man on a railroad, and this money represented his earn-ings. Smith seems to have known nothing about any agreement to leave the checks with him, and for him to draw the money and remit the same to defendant in amounts as needed for the work. Defendant stated, in substance, that he agreed with Matilda Gilbert that she should let him have the $150 for which he was to complete the job of building in fifteen days; that he was to carry one of the checks with him, which she gave him, and he went and got Smith to identify him; that he went back and told her he would take the other.check, and would leave the money with Smith; that he got to thinking about it, and as he knew nobody in Washington and could not get the check cashed there, and Smith would have to send him the money by postal order and he would have to get some one there to identify him, he carried the money to Washington and gave Matilda's aunt $87 for safe-keeping, and he could use it as called for on the building; and that he expended the re-mainder as follows: $46 paid for material; $11.50 for rail-road fare and tools; $3.20 for lime and drayage; 35 cents for telegram; and $2 for provisions for himself. He added, that he bought the new clothes with his own money.

*F. R. Walker* and *G. P. Roberts*, for plaintiff in error.
*C. D. Hill, solicitor-general*, by *T. W. Rucker*, contra.