## 32502. HUFF *v.* THE STATE.

DECIDED JULY 16, 1949.

*Joseph E. Webb*, for plaintiff in error.

*C. S. Baldwin Jr., Solicitor-General*, contra.

MACINTYRE, P. J. W. J. Noggle, the prosecutor, testified: "Year before last [1947] G. H. Huff came to me with the proposition to get me a tombstone, for Brantley Noggle, to go over his grave putting his name on it and the dates of his birth and death. When this occurred, Huff was in my son's store and he promised to buy or get me a tombstone and put it up in Taliaferro County inside of 60 or 90 days. He wanted $70 to buy me a tombstone and put it on the ground, and he gave me a receipt for this money. [The receipt, introduced by the State, recited: "Nov. 20 1947 Recd. W. J. Noggle (70.00) Seventy Dollars *Payment in full for marker.* (Signed) Ideal Marble and Gran. Co. by G. H. Huff."] He got my money in Greene County. I have never had any dealings with anyone except Mr. Huff, and he never put the tombstone down or returned me any of my money, for I was at the church last Wednesday and there was not any tombstone there or any sign of one. I can't read, write, or sign my name." On being recalled to the stand, Noggle testified further: "I didn't sign any contract with Mr. Huff; I

didn't sign this paper [a contract introduced by Huff as having been signed for Noggle by Noggle's daughter], didn't authorize anyone to sign it for me,. and I have not seen that paper. The only paper brought to the store was the receipt." Mrs. Carl Lingold testified: during the same year she had a similar transaction with the defendant, in which she gave him a check for $621.78 for a tombstone, which was never provided, nor was her money returned. Her check was made payable to the Ideal Marble and Granite Company, with which company she had contracted, and she had never entered into a contract with Huff, though he wrote out her contract and put his name on it and endorsed the check in the name of Ideal Marble and Granite Company and put his name on it. L. L. Wyatt testified that he was sheriff of the county, that the Ideal Marble and Granite Company was located in Huff's backyard, and that Huff had told him that he was the owner and operator of that concern. Huff defended, in his statement to the jury, upon the ground that he had contracted with Noggle in writing to supply the tombstone, and that Noggle had made payment, under the contract, in advance. Even though the most favorable view is taken of the State's position, and the defendant's statement is taken most strongly against him — even to the point of disbelieving it entirely, as the jury was authorized to do — and we say that Noggle and Huff never entered into a written contract, still,. nothing more was established by the evidence than that the defendant contracted with the prosecutor to furnish a tombstone within a stipulated time and at a stated price which the prosecutor paid him in advance. Noggle testified that Huff came to him with the *proposition* to buy or get him a tombstone, and the receipt introduced recited that the $70 was *payment in full* for the tombstone. Even if the defendant never really intended to provide the tombstone at all, but fraudulently pretended that he would do so for the purpose of obtaining the money and applying it to his own use, the evidence demonstrates that the money was paid to Huff, not intrusted to him; and while the facts of the case may show great moral turpitude on the defendant's part, they do not render him guilty of larceny after trust. *Wylie* v. *State*, 97 *Ga.* 207 (22 S. E. 954). The evidence did not author-

ize the verdict of guilty of larceny after trust, and the court erred in overruling the motion for a new trial.

*Judgment reversed. Gardner and Townsend, JJ., concur.*